NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2489
No. 07-4212
No. 08-1463
_____

SEYDOU NOUROU WANE,

                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

                                        Respondent
_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A98-582-862)
Immigration Judge:  Rosalind K. Malloy
_____

Submitted Under Third Circuit LAR 34.1(a)
April 13, 2012

Before:  McKEE, *Chief Judge* and HARDIMAN, *Circuit Judges*
and JONES, II,[*] *District Judge*.

(Filed: April 17, 2012)

---

[*] The Honorable C. Darnell Jones, II, District Judge for the United States District
Court for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

Seydou Nourou Wane petitions for review of the Board of Immigration Appeal's final order of removal, denial of his motion to reopen proceedings, and denial of his motion for reconsideration. For the reasons that follow, we will deny his petitions.

I

Because we write for the parties, who are well acquainted with the case, we recount only the essential facts and procedural history.

Wane is a Mauritanian citizen who entered the United States in May 2003 on a student visa. After Wane stopped attending school in August 2003, the Government charged him as removable for failing to maintain status. Wane ultimately conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT). Wane's application alleged persecution in Mauritania on the basis of his race, political opinion, and membership in a political organization known as the Young Blacks.

The immigration judge (IJ) ruled that Wane's asylum application was untimely because he did not file it within a reasonable time after falling out of status. The IJ also denied Wane's applications for withholding of removal and CAT protection, finding that

2

Wane was not likely to be persecuted or tortured if he returned to Mauritania. In doing so, the IJ explained that critical parts of Wane's testimony were uncorroborated and not credible.

The Board of Immigration Appeals (BIA) affirmed, agreeing that Wane's asylum application was untimely. With respect to the remaining claims, the BIA concluded that the IJ's credibility finding "appear[ed] somewhat unclear, as [the IJ] observed that the respondent testified consistently with his asylum application and affidavit, yet note[d] several significant contradictions and implausibilities." Nevertheless, the BIA reasoned that it did not have to "definitively decide this credibility issue, since even if [Wane was] credible, his claim [would fail] based on a failure of a burden of proof, for the reasons set forth by the [IJ] in [her] decision, particularly in light of the almost complete lack of reasonably available corroborating evidence in this case." The BIA also noted that Wane had presented no arguments that would convince it to reverse the IJ's determination regarding CAT protection. Finally, the BIA found "no merit to [Wane's] allegation of bias by the [IJ] because . . . [Wane's] arguments essentially amount[ed] to a disagreement with the way in which the [IJ] weighed and evaluated the evidence before [her]." Wane filed a timely petition for review.

In May 2007, approximately one month after the BIA's ruling, Wane married a United States citizen who filed an I-130 visa petition on his behalf. In June 2007, Wane

3

filed a motion to reopen his proceedings, requesting that his case be remanded pending approval of his I-130 petition. The BIA denied Wane's motion, and he filed a timely petition for review. Wane subsequently sought reconsideration of the BIA's decision in a "request to accept evidence by certification or *sua sponte*." The BIA denied Wane's motion on the basis that he had shown no factual or legal defect in its earlier decision denying his motion to reopen. Moreover, to the extent Wane sought to reopen yet again by presenting new evidence, the BIA denied his motion as both time- and number-barred. Finally, the BIA declined to reopen proceedings *sua sponte*. Wane filed a third timely petition for review, and we consolidated his three petitions.

## II[1]

We consider only the BIA's rulings, but we review the IJ's reasoning to the extent it was adopted by the BIA. *Chavarria v. Gonzalez*, 446 F.3d 508, 515 (3d Cir. 2006). We review legal conclusions *de novo*, *Huaw Wu v. Att'y Gen. of U.S.*, 571 F.3d 314, 317 (3d Cir. 2009), but we review factual findings, including conclusions regarding past persecution, under the "substantial evidence" standard, *Chavarria*, 446 F.3d at 515, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B). Finally, we review the BIA's denial of motions to reopen and motions to reconsider for abuse of discretion. *Pllumi v. Att'y*

---

[1] We have jurisdiction over Wane's petitions pursuant to 8 U.S.C. § 1252.

*Gen. of U.S.*, 642 F.3d 155, 158 (3d Cir. 2011). The BIA abuses its discretion only when it acts in a manner that is "'arbitrary, irrational, or contrary to the law.'" *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004) (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)).

III

We begin with Wane's first petition for review, which appeals the denial of his applications for asylum, withholding of removal, and CAT protection. Wane argues that the BIA erred in finding his asylum application time-barred because he demonstrated "extraordinary circumstances" to excuse his failure to file within the prescribed one-year period. *See* 8 U.S.C. § 1158(a)(2) (imposing a one-year limit unless the alien demonstrates changed or extraordinary circumstances); 8 C.F.R. § 208.4(a)(5) (defining "extraordinary circumstances"). We lack jurisdiction to review the BIA's extraordinary-circumstances determination, however, because it does not raise a "question of law." *Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 189 (3d Cir. 2007).

Wane also argues that the BIA wrongly denied his applications for withholding of removal and CAT protection. To establish eligibility for withholding of removal, Wane must "establish by a 'clear probability' that [his] life or freedom would be threatened in the proposed country of deportation." *Zubeda v. Ashcroft*, 333 F.3d 463, 469 (3d Cir. 2003) (citing *Janusiak v. INS*, 947 F.2d 46, 47 (3d Cir. 1991)). "'Clear probability' means that it is 'more likely than not' that an alien would be subject to persecution."

5

*Long Hao Li v. Att'y Gen. of U.S.*, 633 F.3d 136, 140 (3d Cir. 2011) (quoting *Zubeda*, 333 F.3d at 469). If an alien can establish that he suffered past persecution in the country of removal, there is a rebuttable presumption that he will be subjected to future persecution if removed to that country. *Garcia v. Att'y Gen. of U.S.*, 665 F.3d 496, 505 (3d Cir. 2011). Finally, an applicant for CAT protection must show "'that it is more likely than not that [he] would be tortured if removed to the proposed country of removal.'" *Silva-Rengifo v. Att'y Gen. of U.S.*, 473 F.3d 58, 64 (3d Cir. 2007) (quoting *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002)).

The BIA found the IJ's credibility determination unclear but concluded that even if Wane were credible, he failed to meet his burden of proof because of the "almost complete lack of reasonably available corroborating evidence in this case." The IJ found insufficient evidence to corroborate Wane's claims, noting that Wane produced no evidence to establish two critical facts: (1) that he was a university student in Nouakchott, and (2) that his father was an imam or a marabout who was killed by local officials.

The BIA's finding that Wane failed to meet his burden of proof was supported by substantial evidence. "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(b). Nevertheless, corroboration may reasonably be expected for "'facts which are central to [his] claim and easily subject to verification.'" *Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001)

6

(quoting *Matter of S-M-J*, 21 I. & N. Dec. 722, 725 (BIA 1997)). "[F]ailure to produce corroborating evidence may undermine an applicant's case where (1) the IJ identifies facts for which it is reasonable to expect the applicant to produce corroboration, (2) the applicant fails to corroborate, and (3) the applicant fails to adequately explain that failure." *Chukwu v. Att'y Gen. of U.S.*, 484 F.3d 185, 192 (3d Cir. 2007) (citing, *inter alia*, *Abdulai*, 239 F.3d at 554)).[2]

In this case, the IJ properly engaged in the *Abdulai* analysis. The IJ repeatedly noted that Wane had not corroborated his status as a university student in Nouakchott, which was significant because "he was saying that he was a student and . . . active in politics as a student." Wane's student status is central to his claim because he contends he was harassed and detained after protesting conditions for students and speaking publicly as a leader of the Young Blacks.

According to the IJ, Wane could have corroborated his student status by producing a university transcript. The evidence Wane produced, however, did not corroborate his story. Wane provided his high school transcripts but conceded that his university transcripts remained in Mauritania. Moreover, Wane's passport failed to indicate he was

---

[2] The REAL ID Act gave further guidance as to when corroboration is required, *see* 8 U.S.C. § 1158(b)(1)(B)(ii), but it does not apply here because Wane filed his application before May 11, 2005, *see Chukwu*, 484 F.3d at 192 n.2. In any event, the REAL ID Act did not change our rules regarding the IJ's duty to develop an applicant's testimony in accord with the *Abdulai* steps. *Id.* at 192.

a student, and his Mauritanian identification card did not list an address in Nouakchott. Wane tried to prove that he participated in student activities by providing a photograph of him holding a microphone, but nothing in the photograph indicates where it was taken. Finally, when asked to produce materials proving the existence of the Young Blacks, Wane claimed that all such materials have been lost or destroyed.

Indeed, Wane conceded that his university transcripts were available and could be obtained. His only explanation for failing to provide evidence of his status as a university student was that he was not aware he would need it and that he "was probably intending to rely upon people coming [to the hearing] and explaining that . . . they knew he was in university." (*Id.*) We agree with the IJ that this was an insufficient explanation. As the IJ noted, Wane's student activities were central to his testimony, he had nearly a year to gather the evidence needed to verify his account, and requesting a transcript would not have alerted Mauritanian authorities to his asylum application. For these reasons, we hold that the IJ's corroboration determination was supported by substantial evidence in the record.[3]

---

[3] Because the IJ did not err in finding that Wane failed to corroborate his student status, which was central to his claim and easily subject to verification, *Abdulai*, 239 F.3d at 554, we need not consider the IJ's finding that Wane failed to corroborate his claim about his father being an imam or a marabout who was killed by local officials.

In addition to claiming that the BIA and the IJ erred in finding a lack of corroboration, Wane argues that they were biased in their evaluation of the evidence and "considered the evidence in a subjective manner." This claim is not supported by the record. Wane simply disagrees with how the BIA and the IJ weighed the evidence he submitted, and there is no indication that they failed to do so objectively. As a result, we will deny Wane's first petition for review.

IV

Wane's second petition appeals the BIA's denial of his motion to reopen proceedings. The BIA declined to reopen because Wane failed to present clear and convincing evidence indicating a strong likelihood that his marriage was bona fide, which was necessary for establishing *prima facie* eligibility for adjustment of status. *See Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253, 256 (BIA 2002). In support of his motion, Wane filed only a medical insurance enrollment form along with a statement that he would submit "additional bona fides as they become available." The BIA did not abuse its discretion in denying Wane's motion based on the meager evidence he provided.

Wane argues that the BIA violated his due process rights when it denied his motion to reopen only sixty-six days after it was filed. According to Wane, "[t]his might be a new world record for the BIA decision making process," and the BIA's speed "generated [an] injustice." Wane contends that he and his wife "took their duty to

9

produce evidence very seriously and did everything in their power to satisfy the BIA."

He also claims that the BIA violated the Administrative Procedure Act by failing to notify

him that it was going to deny his motion. According to Wane, "[h]ad the BIA notified

[him] that a decision would be made at a particular time or promulgated regulations

indicating when decisions would be made or when documents . . . would be due, then [he]

would have known the [timeline] within which he had to act."

We disagree with Wane's novel argument that the BIA's expeditious decision

violated his right to due process. Wane cites no authority to support his claim, and we

have found none. *Cf. Reynoso-Lopez v. Ashcroft*, 369 F.3d 275, 284 (3d Cir. 2004)

("This result would conflict with the INS' goal of having expeditious removal

proceedings."). Nor does Wane provide any authority supporting his view that the BIA

must give advance notice of when it intends to rule on a motion to reopen. Motions to

reopen for the purpose of submitting applications for relief must be "accompanied by . . .

all supporting documentation." 8 C.F.R. § 1003.2(c). When Wane filed his motion with

almost no documentation, the BIA was free to act on the record as submitted.

Accordingly, we will deny Wane's third petition for review.

V

Wane's third petition for review appeals the BIA's denial of his motion to

reconsider. Wane claims the BIA abused its discretion and violated his due process rights

by failing to reconsider its decision not to reopen his proceedings. Again, Wane cites no cases in support of his due process argument. Instead, he claims only that the BIA should have reconsidered its decision because he mailed documents proving the bona fides of his marriage on the same day that his motion to reopen was denied. Yet Wane's subsequent mailing of documentation does not establish that the BIA committed any "errors of fact or law in [its] prior . . . decision." 8 C.F.R. § 1003.2(b). Given the scant evidence submitted at the time, the BIA found that Wane had failed to meet his burden of showing *prima facie* eligibility for adjustment of status. The BIA did not abuse its discretion in denying his motion.

To the extent Wane instead seeks to reopen proceedings in light of the new documentation he submitted, the BIA did not abuse its discretion in denying his motion as both untimely and number-barred. 8 C.F.R. § 1003.2(c)(2). Finally, Wane argues that the BIA should have reopened his proceedings *sua sponte* because he has shown "exceptional circumstances" by doing "everything in his power to satisfy the BIA." This argument fails because we lack jurisdiction to review the BIA's discretionary decision not to reopen *sua sponte*. *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003).

VI

For the reasons stated, we will deny Wane's petitions for review.

11