**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2509
_____

ARFAN YASIN,

Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(BIA-1: A074-857-795)
Immigration Judge:  Eugene Pugliese

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 22, 2021

Before:  AMBRO, RESTREPO, *Circuit Judges*, and
NOREIKA[*], *District Judge*

(Opinion Filed: December 20, 2021)

_____

[*]  The Honorable Maryellen Noreika, United States District
Judge for the District of Delaware, sitting by designation.

Usman B. Ahmad
47-40 21st Street
Penthouse A 10th Floor
Long Island City, New York 11101
          *Counsel for Petitioner*

Jeffrey Bossert Clark
Andrew N. O'Malley
Sarai M. Aldana
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
          *Counsel for Respondent*

_____

OPINION OF THE COURT
_____

RESTREPO, *Circuit Judge*.

Arfan Yasin, a citizen and native of Pakistan, last entered the United States over two decades ago. In 2002, he became subject to a final order of removal issued by the Board of Immigration Appeals ("BIA"). He continued residing in the United States following the issuance of his final order of removal, and, in 2017, he and his United States citizen wife

welcomed a United States citizen daughter. Yasin's daughter requires regular medical treatment to address gross developmental delays.

Approximately seven months following his daughter's birth, Yasin filed an I-360, Petition for Amerasian, Widow(er), or Special Immigrant, requesting classification "as the abused spouse of a United States citizen" under the Violence Against Women Act ("VAWA"). His I-360 self-petition was approved over two years later, and in December 2019 – more than 17 years following his final order of removal – Yasin filed a motion to reopen *sua sponte* his removal proceedings on the ground that reopening was warranted to address his classification as an abused spouse under VAWA. The BIA denied his motion, refusing to grant Yasin a waiver of the 1-year limitations period under 8 U.S.C. § 1229a(c)(7)(C)(iv)(III), as applicable to VAWA-based motions to reopen.

Because the BIA's decision whether to waive § 1229a(c)(7)(C)(iv)(III)'s limitations period is an exercise of discretion committed by statute to the Attorney General, we apply 8 U.S.C. § 1252(a)(2)(B)(ii)'s jurisdiction-stripping provision and hold that our Court lacks jurisdiction to review Yasin's motion to reopen. For the reasons set forth in this opinion, we will deny the petition.

## I.

## A.

Yasin last entered the United States near Massena, New York on or about August 17, 2000. That same day, the Government served him with a Notice to Appear ("NTA"), charging him as removable from the United States pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act for being "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General." A.R. 171. On August 30, 2000, the Government filed the NTA with the Executive Office for Immigration Review, thereby formally initiating removal proceedings. Approximately two months later, Yasin filed a motion to change venue in which he admitted to the allegations stated in the NTA and conceded to being removable as charged.[1]

On April 12, 2001, Yasin applied for withholding of removal and asylum. The Immigration Judge ("IJ") denied Yasin's application in an oral decision on September 10, 2001. According to the IJ, Yasin's claims lacked corroboration, credibility, and logic. Yasin appealed, and the BIA affirmed the IJ's decision, without opinion, on September 24, 2002.

---

[1] Yasin's motion to change venue was granted in November 2000.

**B.**

In June 2016, following a religious ceremony, Yasin – still residing in the United States – registered with the requisite local authorities a marriage between him and a United States citizen. In January 2017, the couple welcomed a United States citizen daughter. Following the child's birth, Yasin's spouse "regularly began subjecting him to psychological abuse and extreme cruelty, often using their child as a means of controlling [him]." A.R. 11. During this period of abuse, the child was diagnosed with "developmental gross motor delays," which required her to receive regular medical care. A.R. 12. Yasin "ensured that he cared for his daughter's needs" and "began taking [her] for treatment[,] taking her to and from appointments, and regularly ensuring to follow up with [her] specialist." A.R. 12. He also "assist[ed] his daughter through home exercises to alleviate [her] pain." A.R. 14. According to Yasin, his spouse did not actively participate in the child's medical treatment. In August 2017, Yasin filed an I-360, Petition for Amerasian, Widow(er), or Special Immigrant, requesting classification "as the abused spouse of a United States citizen" pursuant to VAWA. A.R. 12. His self-petition was approved in September 2019.

**C.**

On December 23, 2019, more than 17 years after becoming subject to a final order of removal, Yasin filed a motion with the BIA to reopen *sua sponte* his removal proceedings. He argued that his marriage, the abuse that he suffered

at the hands of his spouse, and the approval of his I-360 self-petition all amounted to "new and material evidence that was not previously available" at the time that the BIA issued his final order of removal in 2002. A.R. 13. Recognizing that his petition was untimely, Yasin urged the BIA to waive the 1-year limitations period for filing a motion to reopen under 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) (the special rule for battered spouses, children, and parents) on a finding that his child would suffer "extreme hardship" if the BIA denied him the relief sought in his motion to reopen, due to her medical diagnosis and his active role in her treatment. A.R. 13-14. Yasin also maintained that the BIA should grant his motion to reopen for various reasons of equity, and for the sake of judicial efficiency.

The BIA denied Yasin's motion on June 29, 2020. Concluding that he was not eligible for a waiver of the limitations period, the BIA acknowledged that it was "sympathetic" to Yasin's situation but reasoned that the evidence provided "[did] not establish the requisite extraordinary circumstances or extreme hardship necessary to waive the applicable 1-year filing deadline." A.R. 3. The BIA also noted that "[b]ecoming eligible for relief from removal after a final administrative order has been entered is common and does not, in itself, constitute an exceptional situation warranting [its] consideration of an untimely motion." A.R. 3 (citing *Matter of Yauri*, 25 I&N Dec. 103, 105 (BIA 2009)). Yasin timely petitions us for review.

6

## II.

The BIA had jurisdiction under 8 C.F.R. § 1003.2 to consider Yasin's motion to reopen. The extent to which we have jurisdiction under 8 U.S.C. § 1252 to consider the BIA's denial of Yasin's motion to reopen is an open issue for our review.

We review the BIA's denial of a motion to reopen for abuse of discretion. *Guo v. Ashcroft*, 386 F.3d 556, 562 (3d Cir. 2004). "As a general rule, motions to reopen are granted only under compelling circumstances," *id.* at 561, and we will not disturb the BIA's "[d]iscretionary decisions . . . unless they are found to be arbitrary, irrational, or contrary to law," *id.* at 562 (quoting *Tipu v. INS*, 20 F.3d 580, 582 (3d Cir. 1994)). We conduct *de novo* review of the BIA's legal conclusions and consider its findings of fact under a "substantial evidence" standard. *Darby v. Att'y Gen.*, 1 F.4th 151, 159 (3d Cir. 2021); *see also Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2005) (indicating that the "substantial evidence" standard "requires us to treat findings of fact as 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary'") (quoting 8 U.S.C. § 1252(b)(4)(B)).

## III.

As a threshold matter, we must consider our own jurisdiction to review Yasin's petition. In denying Yasin's VAWA-based motion to reopen, the BIA – after recognizing

7

that it was filed more than 17 years after the closing of the 1-year limitations period pursuant to 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) – exercised its statutorily committed discretion *not* to waive the limitations period.  We generally lack jurisdiction to review an exercise of discretion committed by statute to the Attorney General.  *See* 8 U.S.C. § 1252(a)(2)(B)(ii).  Although we have yet to consider § 1252(a)(2)(B)(ii)'s limit on our jurisdiction in the VAWA context, we hold that our Court lacks jurisdiction to review the BIA's denial of a VAWA-based motion to reopen grounded on a determination not to waive § 1229a(c)(7)(C)(iv)(III)'s limitations period.  Based on the following analysis, we will deny Yasin's petition for review.

## A.

Typically, an individual subject to a final order of removal has 90 days in which to file a motion to reopen removal proceedings.  8 U.S.C. § 1229a(c)(7)(C)(i) ("[T]he motion to reopen shall be filed within 90 days of the date of entry of a final administrative order of removal.").  However, under VAWA, an individual classified as an abused spouse who is subject to a final order of removal has 1 year in which to file a motion to reopen removal proceedings.  *See* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III) ("Any limitation under this section on the deadlines for filing such motions shall not apply[,] . . . if the motion to reopen is filed within 1 year of the entry of the final order of removal[.]").  The Attorney General has discretion to waive this 1-year limitations period if the individual seeking relief can demonstrate that a lack of waiver

8

would impose "extraordinary circumstances or extreme hardship" on the individual's child. *See id.* ("[T]he Attorney General may, *in the Attorney General's discretion*, waive this time limitation in the case of an alien who demonstrates extraordinary circumstances or extreme hardship to the alien's child[.]") (emphasis added).

We generally do not have jurisdiction to consider an Attorney General's decision that has been statutorily committed to his or her discretion. 8 U.S.C. § 1252(a)(2)(B)(ii) ("[N]o court shall have jurisdiction to review[,] . . . any other decision or action of the Attorney General . . . the authority for which is specified under this subchapter to be in the discretion of the Attorney General . . . other than the granting of relief under section 1158(a) of this title."). In *Kucana v. Holder*, 558 U.S. 233, 237, 244 (2010), the Supreme Court clarified that § 1252(a)(2)(B)(ii)'s "jurisdiction-stripping provision" refers to "statutory, but not to regulatory," grants of discretionary authority to the Attorney General. As the *Kucana* Court explained, the BIA's power to decide a motion to reopen is "specified not in a statute, but only in the Attorney General's regulation." *Id.* at 243-44 (internal quotations omitted). So although Courts of Appeals retain jurisdiction to review the BIA's "[a]ction on motions to reopen, made discretionary by the Attorney General only," *id.* at 252-53, we do not have jurisdiction to review the BIA's action on motions to reopen where the underlying decision rests on an exercise of discretion by the Attorney General made by Congress, *see id.* at 242-43, 243 n.10, 248; *see also Luziga v.*

9

*Att'y Gen.*, 937 F.3d 244, 251 n.7 (3d Cir. 2019) (recognizing the holding in *Kucana* that § 1252(a)(2)(B)(ii) "only prohibits our review of matters specifically delegated to the Attorney General's discretion"); *Chehazeh v. Att'y Gen.*, 666 F.3d 118, 135 n.21 (3d Cir. 2012) (acknowledging that § 1252(a)(2)(B)(ii) applies only to statutory grants of discretion); *cf. Yusupov v. Att'y Gen.*, 518 F.3d 185, 195 n.15 (3d Cir. 2008) (analyzing the scope of § 1252(a)(2)(B)(ii), prior to *Kucana*, and suggesting that we do not have jurisdiction to review matters that Congress "specif[ied]" to be in the discretion of the Attorney General); *Okereke v. Att'y Gen.*, 262 F. App'x 460, 462 (3d Cir. 2008) (concluding, in a non-precedential opinion decided prior to *Kucana*, that § 1229a(c)(7)(C)(iv)(III) "trigger[s] the jurisdictional bar" of § 1252(a)(2)(B)(ii)).

Although we have yet to consider precedentially the role of § 1252(a)(2)(B)(ii) in the context of the Attorney General's denial of a VAWA-based motion to reopen pursuant to a refusal to waive the limitations period under § 1229a(c)(7)(C)(iv)(III), the Supreme Court in *Kucana* emphasized that "[t]he only statutory reference to discretion respecting motions to reopen appears in § 1229a(c)(7)(C)(iv)(III), which gives the Attorney General 'discretion' to waive one of the statute's time limitations in extraordinary circumstances." *Kucana*, 558 U.S. at 243 n.10. In other words, the Supreme Court has recognized that Congress specified through statute that it is within the Attorney General's discretion to make a determination as to

10

§ 1229a(c)(7)(C)(iv)(III)'s limitations period. We will do the same. Therefore, we hold that § 1252(a)(2)(B)(ii) deprives us of jurisdiction to review the BIA's denial of a VAWA-based motion to reopen based on a determination not to waive § 1229a(c)(7)(C)(iv)(III)'s limitations period.

This interpretation of the interplay between § 1252(a)(2)(B)(ii) and § 1229a(c)(7)(C)(iv)(III) is consistent with related decisions from other Courts of Appeals. *See, e.g.*, *Twum v. Barr*, 930 F.3d 10, 18, 18 n.9 (1st Cir. 2019) ("It is evident without question that the statute leaves final determination on whether to grant timeliness waivers . . . to the Attorney General's discretion and so places those decisions beyond our review."); *Joseph v. Lynch*, 793 F.3d 739, 741 (7th Cir. 2015) ("Because the decision whether to waive the time limit on a motion to reopen that invokes VAWA is committed by statute to the Attorney General's discretion, *see* 8 U.S.C. § 1229a(c)(7)(C)(iv)(III), we lack subject-matter jurisdiction to review an exercise of that discretion."); *see also Mansaray v. Barr*, 771 F. App'x 128, 129 (2d Cir. 2019); *Ezema v. Garland*, 849 F. App'x 50, 50-51 (4th Cir. 2021); *Pinho-De Oliveira v. Barr*, 778 F. App'x 332, 333 (5th Cir. 2019); *cf. Butalova v. Att'y Gen.*, 768 F.3d 1179, 1182-83 (11th Cir. 2014). *But cf. Cardenas v. Lynch*, 669 F. App'x 354, 355 (9th Cir. 2016) (relying on pre-*Kucana* precedent to conclude that it retained jurisdiction where the BIA incorrectly applied the "extraordinary circumstances" exception under § 1229a(c)(7)(C)(iv)(III), as such a question is "legal in nature").

11

That being said, this jurisdictional bar is not without its own statutory limitations. We still retain jurisdiction to consider constitutional challenges or questions of law. 8 U.S.C. § 1252(a)(2)(D) ("Nothing in subparagraph (B)[,] . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section."); *Luziga*, 937 F.3d at 251; *see also Joseph*, 793 F.3d at 740; *Butalova*, 768 F.3d at 1183. "To fall under § 1252(a)(2)(D)'s grant of jurisdiction, an issue must be either a 'purely legal inquir[y]' or raise a 'colorable' claim that a constitutional violation has occurred." *Rachak v. Att'y Gen.*, 734 F.3d 214, 216 (3d Cir. 2013) (quoting *Roye v. Att'y Gen.*, 693 F.3d 333, 339 (3d Cir. 2012)). And "[t]o determine whether a claim is colorable, we ask whether it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous." *Mirambeaux v. Att'y Gen.*, 977 F.3d 288, 292 (3d Cir. 2020) (quoting *Pareja v. Att'y Gen.*, 615 F.3d 180, 186 (3d Cir. 2010)).

**B.**

Turning to Yasin's petition, we lack jurisdiction to review the BIA's denial of his VAWA-based motion to reopen. As an initial matter, the parties do not dispute the BIA's determination that Yasin's petition was untimely – it was filed 17 years after the close of § 1229a(c)(7)(C)(iv)(III)'s limitations period – or that Yasin received a VAWA classification as an abused spouse. Next, the BIA exercised its discretion

12

under § 1229a(c)(7)(C)(iv)(III) to conclude that Yasin did not demonstrate the "requisite extraordinary circumstances or extreme hardship necessary to waive the applicable 1-year filing deadline." A.R. 3. Because § 1229a(c)(7)(C)(iv)(III) grants the Attorney General discretion to determine whether to waive the limitations period – and because § 1252(a)(2)(B)(ii), with limited exception,[2] strips us of jurisdiction to consider the Attorney General's decisions made discretionary by Congress – we lack jurisdiction to review the BIA's decision denying Yasin's motion to reopen on the ground that it refused to waive § 1229a(c)(7)(C)(iv)(III)'s limitations period. *See Kucana*, 558 U.S. at 237, 243 n.10.[3]

---

[2] There is a limited exception under § 1252(a)(2)(B)(ii) for a statutorily granted discretionary decision made pursuant to 8 U.S.C. § 1158(a). However, § 1158(a) is not relevant to the underlying jurisdictional issues regarding our consideration of Yasin's petition, and Yasin has made no suggestion to the contrary.

[3] Yasin also urges us to exercise jurisdiction insofar as the BIA declined to exercise its *sua sponte* authority in granting his motion to reopen. We disagree. "Because the BIA retains unfettered discretion to decline to *sua sponte* reopen . . . a deportation proceeding, this [C]ourt is without jurisdiction to review a decision declining to exercise such discretion to reopen . . . the case." *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003). In acknowledging this limit on our juris-

13

diction, Yasin suggests that we apply an exception to the general rule: the "settled course exception." *See Sang Goo Park v. Att'y Gen.*, 846 F.3d 645, 653 (3d Cir. 2017). Under that exception, "a petitioner must establish that the BIA has limited its discretion via a policy, rule, settled course of adjudication, or by some other method, such that the BIA's discretion can be meaningfully reviewed for abuse." *Id.* "The petitioner's showing must be persuasive enough to allow the reasonable inference that the BIA's discretion has in fact been limited." *Id.*

Contrary to Yasin's claim, the "settled course exception" does not apply here. Yasin's argument appears to hinge on the idea that "the BIA has established a settled practice to reopen proceedings provided that a respondent demonstrates *prima facie* eligibility for relief under VAWA and extreme hardship to a child by way of meaningful evidence." Pet'r's Br. 16. However, the cases that Yasin cites in support suggest, if anything, that the BIA has a settled course of practice in declining to exercise its discretion to *sua sponte* reopen proceedings. *See id.* at 16-17 (citing cases). These cases in no way demonstrate, as Yasin suggests, the inverse: that the BIA has a settled course in granting a motion to reopen *sua sponte* when the movant demonstrates a *prima facie* case. *Cf.* A.R. 3 (As the BIA indicated in its decision, "[b]ecoming eligible for relief from removal after a final administrative order has been entered is common and does not, in itself, constitute an exceptional situation warranting [its] consideration of an

14

Finally, although we do have jurisdiction under § 1252(a)(2)(D) to review any "constitutional claims or questions of law raised upon a petition of review," Yasin's petition raises neither. *See Mirambeaux*, 977 F.3d at 292.

## IV.

Although we are sympathetic to Yasin's compelling circumstances, our lack of jurisdiction restricts us from reviewing the underlying merits of his motion to reopen. Therefore, for these reasons, we will deny his petition for review.

---

untimely motion."). And even if Yasin was to point to "one favorable exercise of discretion," that alone "does not a settled course make." *Sang Goo Park*, 846 F.3d at 654.

Finally, it is unclear from Yasin's petition whether he relies on another exception to the general rule that we lack jurisdiction over the BIA's "unfettered discretion" to decline to *sua sponte* reopen removal proceedings, *i.e.*, that the BIA applied an "incorrect legal premise" in reaching its decision. *See Darby v. Att'y Gen.*, 1 F.4th 151, 164 (3d Cir. 2021); *Sang Goo Park*, 846 F.3d at 651. However, to the extent that Yasin suggests that the BIA applied an "incorrect legal premise" such that it serves as an exception to our lack of jurisdiction, we disagree. Yasin has not shown that the BIA applied an "incorrect legal premise." And his argument that the BIA's actions were "irrational" does not merit a suggestion that the BIA relied on incorrect law. *See* Pet'r's Br. 17-18.

15